UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LAWRENCE PETERSON, | ) |
| Plaintiff, | ) |
| vs. | ) 1:14-cv-00655-SEB-MJD |
| C. MORRISON, et. al, | ) |
| Defendants. | ) |

**Entry Discussing Motion for Summary Judgment
and Directing Entry of Final Judgment**

Plaintiff Lawrence Peterson, a former inmate of the Duvall Work Release Center ("Duvall"), brings this action pursuant to 42 U.S.C. § 1983 based on treatment he received while housed there. Specifically, Peterson alleges that the defendants, C. Morrison and Ben Sandman, Duvall employees, subjected him to cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution by forcing him to be exposed to second-hand smoke despite the fact that he suffers from COPD and serious chest pains. Arguing that Peterson failed to exhaust his available administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), the defendants move for summary judgment.

**I. Standard of Review**

A motion for summary judgment asks that the Court find that a trial based on the uncontroverted and admissible evidence is unnecessary because, as a matter of law, it would conclude in the moving party's favor. *See* Fed. R. Civ. Pro. 56. To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there

is a material issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The substantive law identifies which facts are material. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris*, 550 U.S. 372 (2007). The key inquiry is whether admissible evidence exists to support a plaintiff's claims, not the weight or credibility of that evidence, both of which are assessments reserved to the trier of fact. *See Schacht v. Wis. Dep't of Corrections,* 175 F.3d 497, 504 (7th Cir. 1999). When evaluating this inquiry, the Court must give the non-moving party the benefit of all reasonable inferences from the evidence submitted and resolve "any doubt as to the existence of a genuine issue for trial . . . against the moving party." *Celotex,* 477 U.S. at 330.

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. Pro. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. Pro. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. Pro. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially the grant of summary judgment. Fed. R. Civ. Pro. 56(e).

Local Rule 56-1(b) requires a brief in opposition to a motion for summary judgment to include a section labeled "Statement of Material Facts in Dispute", which responds to the

movant's asserted material facts by identifying the potentially determinative facts and factual disputes which the non-moving party contends demonstrate that there is a dispute of fact precluding summary judgment. These facts must be supported by appropriate citations to admissible evidence. *See* 56-1(e); *Edward E. Gillen Co. v. City of Lake Forest*, 3 F.3d 192, 196 (7th Cir. 1993). Peterson has not presented the Court with a brief in opposition to the motion for summary judgment or a Statement of Material Facts in Dispute. Instead he has submitted only his Declaration in response to the motion for summary judgment. That Declaration has been considered, but any conclusory allegations in the Declaration are insufficient to create a genuine issue of material fact where the defendants have provided supported evidence of their assertions of fact. *See Young v. Monahan*, 420 F. App'x 578, 583 (7th Cir. 2011) (citing *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990); *Payne v. Pauley,* 337 F.3d 767, 773 (7th Cir. 2003)).

## II. Undisputed Facts

Applying the standards set forth above, the undisputed facts are as follows:

A. *The Duvall Residential Center*

At all times relevant to the complaint, Lawrence Peterson was a resident of Duvall. In 1983, following the passage of the community corrections statute by the Indiana General Assembly, the City-County Council enacted a local ordinance creating the Marion County Community Corrections ("MCCC"). *See* Indianapolis, IN., Rev. Code § 283-101.1 Indiana Code section 11-10-8 provides for work release programs through community corrections facilities. Indiana Code section 11-12 is the community corrections statute. This statute gives the City of Indianapolis/Marion County the authority to "establish and operate a community corrections advisory board for the purpose of coordinating or operating community corrections programs."

3

*See* Ind. Code § 11-12-1-2 (2014). The community corrections programs may include residential or work release programs. Ind. Code § 11-12-1-2.5(a)(1).

Duvall was opened in October 2007 and provides 350 beds for non-violent males who are serving work-release sentences through MCCC. In addition to providing local offenders an option to serve their work-release sentences through Duvall, it also contracts with the Indiana Department of Correction to provide offenders with housing who are on work release through the Indiana Department of Correction. Residents are permitted to leave the facility to work, seek employment, attend school, and receive medical care. Residents may also earn passes to visit with family or be granted other passes for special circumstances.

B. *Grievance Policy at Duvall*

On June 9, 1989, Peterson was given a fifty year sentence for committing a burglary and theft in Marion County Superior Court. As a result of his sentence, Peterson's projected release date from prison was June 19, 2014. Peterson was sent to Duvall on January 15, 2014, to serve out the rest of his sentence via a work-release.

When Peterson entered into the work release program at Duvall in January 2014, it had in place procedures whereby residents could formally complain about the conditions of their detention or other specific incidents of alleged misconduct. The details of the grievance procedure are outlined in the Resident Handbook, which each resident receives upon entering Duvall. The grievance procedure allows residents to resolve concerns and complaints about all aspects relating to their sentence and placement at Duvall, including harassment by other residents and the need for medical treatment.

The Duvall Grievance Procedure requires the resident to attempt to first informally resolve the complaint by discussing the matter with a staff member via a message card. If there is

no such single person, the resident is to contact the Duvall Team Leader or Residential Program Coordinator, who will direct the resident's complaint to an appropriate staff member. All complaints must be submitted by the resident within fourteen days of the incident/problem.

If the resident has been unable to resolve his complaint or concern informally, the resident is then required to file a formal grievance by using the Grievance Form. A Grievance Form is available by request from the Duvall Team Leader, Residential Programs Coordinator, Security Supervisor, and Center Director. A resident wishing to file a grievance is required to submit a completed grievance form no later than thirty days from the date of the incident giving rise to the complaint or concern.

The Grievance Form is to be submitted to the Residential Programs Coordinator who may forward it to the appropriate Supervisor as needed. The Grievance Form must explain how the situation or incident affects the offender personally, and must explain what actions he has taken to try to resolve the complaint or concern informally, including the date he informally contacted staff about the complaint, the name and title of the staff person with whom he discussed the complaint, and the response from the staff person. After the filing of the resident's grievance, the Residential Programs Coordinator will investigate and respond to the grievance within five business days, unless the Coordinator indicates he needs additional time for investigation purposes. A copy of the Grievance Form and response will be provided to the appropriate Administrative Assistant. The Administrative Assistant keeps copies of all grievances and responses on file, as well as keeps statistics including the number of grievances filed, the number of grievances filed that are "not grievable," the number of grievances resolved informally (if information is available), and the number of grievances resolved formally.

If a resident is not satisfied with the response to the Grievance, an appeal may be submitted to the Center Director within seven days of the receipt of the response. The Center Director will further investigate the matter and either affirm, modify, or reverse the response to the grievance. The Center Director's decision is the final administrative step.

Peterson received a copy of the Resident Handbook when he arrived at Duvall on January 15, 2014. In his Residential Center Contract, he initialed his agreement to obey all rules and regulations set out in the Resident Handbook. A review of Peterson's entire resident file for the duration of Peterson's residency at Duvall revealed that Peterson never filed a grievance during his stay at Duvall, and he did not file a grievance regarding the medical care (or lack thereof), second-hand smoke exposure, or his alleged denial of medical treatment.

### III. Discussion

The PLRA requires that a prisoner exhaust his available administrative remedies before bringing a suit concerning prison conditions. 42 U.S.C. § 1997e(a); *see Porter v. Nussle,* 534 U.S. 516, 524-25 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* at 532 (citation omitted).

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo,* 548 U.S. 81, 90-91 (2006) (footnote omitted); *see also Dale v. Lappin,* 376 F.3d 652, 655 (7th Cir. 2004) ("In order to properly exhaust, a prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'") (quoting *Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2002)). "In order to exhaust administrative remedies, a prisoner must take all steps

prescribed by the prison's grievance system." *Ford v. Johnson,* 362 F.3d 395, 397 (7th Cir. 2004).

The defendants argue that by failing to file a grievance as required by the Grievance Policy, Peterson failed to exhaust his administrative remedies as required by the PLRA. Peterson appears to argue that the PLRA requirement is not applicable to his claims because: (1) the PLRA does not apply to Duvall; and (2) Duvall did not offer a grievance policy.

Peterson asserts that because Duvall is a privately-run facility, the PLRA does not apply to this lawsuit. The PLRA provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or *other correctional facility* until such administrative remedies as are available are exhausted." 42 U.S.C.A. § 1997e(a) (emphasis added). Duvall houses inmates of the Indiana Department of Correction who are completing their sentences. This facility certainly qualifies as an "other correctional facility" for purposes of the PLRA. *See Witzke v. Femal*, 376 F.3d 744, 753 (7th Cir. 2004) (a halfway house is an "other correctional facility"). Because Duvall qualifies as a correctional facility under the PLRA, the exhaustion requirement applies to Peterson's claims.

Next, Peterson appears to argue that because Duvall did not have a grievance policy, he is excused from failing to abide by that policy. But Peterson's bald assertion that Duvall did not offer a grievance procedure is unfounded. *See Young,* 420 Fed. App'x at 583. It is undisputed that Peterson did not file a grievance regarding his complaints of second-hand smoke exposure. The defendants have shown that Duvall had a grievance policy in place at the time of Peterson's allegations at issue in his complaint, that Peterson received a copy of the Resident Handbook containing the grievance policy, and that Peterson agreed to comply with the rules and

regulations outlined in the Resident Handbook. Peterson states simply that there was no grievance policy. This is insufficient to defeat the defendants' supported evidence that Duvall had a grievance policy that Peterson failed to follow. Accordingly, it is undisputed that Peterson failed to complete the exhaustion process before filing this action. Therefore, in light of 42 U.S.C. § 1997e(a), Peterson's lawsuit should not have been brought and must now be dismissed without prejudice. *Ford v. Johnson,* 362 F.3d 395, 401 (7th Cir. 2004). ("We therefore hold that *all* dismissals under § 1997e(a) should be without prejudice.").

## IV. Conclusion

For the foregoing reasons, the defendants' motion for summary judgment [dkt 17] is **granted**. Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 2/12/2015

*[signature: Sarah Evans Barker]*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Lawrence Peterson
5526 East 21st Street
Indianapolis, IN 46254

All electronically registered counsel